## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHASE WILLIAMS AND WILLIAM ZHANG, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Civ. No. 1:20-cv-2809-LAK |
| v. | <u>CLASS ACTION</u> |
| BLOCK.ONE, BRENDAN BLUMER, and DANIEL LARIMER, | |
| Defendants. | |
| CRYPTO ASSETS OPPORTUNITY FUND LLC and JOHNNY HONG, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Civ. No.: 1:20-cv-3829 |
| v. | <u>CLASS ACTION</u> |
| BLOCK.ONE, BRENDAN BLUMER, DANIEL LARIMER, IAN GRIGG, and BROCK PIERCE, | |
| Defendants. | |

**LEAD PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR APPROVAL OF NOTICE OF SETTLEMENT PURSUANT TO FED. R. CIV. P. 23**

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

I.    INTRODUCTION .................................................................................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND OF THE LITIGATION...................... 4

III.  THE PROPOSED SETTLEMENT WARRANTS NOTICE TO THE CLASS.................... 11

     A.    The Court's Reasons for Not Approving the First Settlement ...................................... 11

     B.    Description of the New Proposed Class ........................................................................ 12

     C.    The Plan of Allocation ................................................................................................. 17

     D.    Lead Plaintiff Is Adequate to Represent Members of the Proposed Class.................. 18

     E.    Notice of Settlement Should Be Authorized ................................................................ 19

IV.  NOTICE OF THE SETTLEMENT AND PROCEDURE FOR PROVIDING
NOTICE TO CLASS MEMBERS SHOULD BE APPROVED........................................... 19

     A.    The Content of the Notice ............................................................................................ 19

     B.    The Notice Procedure ................................................................................................... 20

V.    THE PROPOSED SCHEDULE SHOULD BE APPROVED............................................... 22

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Barron v. Helbiz Inc.*,
   No. 20-cv-4703 (LLS), 2021 WL 229609 (S.D.N.Y. Jan. 22, 2021) .....................................16

*Barron v. Helbiz Inc.*,
   No. 21-278, 2021 WL 4519887 (2d Cir. Oct. 4, 2021).........................................................16

*In re iAnthus Capital Holdings, Inc. Sec. Litig.*,
   20-cv-03135-LAK, 2022 WL 4539119 (S.D.N.Y. Sept. 28, 2022).......................................15

*Lomeli v. Sec. & Inv. Co. Bahr.*,
   2013 WL 6170572 (2d Cir. Nov. 26, 2013)..........................................................................21

*Morrison v. National Australia Bank Ltd.*,
   561 U.S. 247 (2010)..................................................................................... *passim*

*In re Petrobras Sec. Litig.*,
   317 F. Supp. 3d 858 (S.D.N.Y. 2018)....................................................................................2

*In re Poloniex*,
   SEC Rel. No. 92607 (Aug. 9, 2021) .....................................................................................18

*In re Stock Exch. Options Trading Antitrust Litig.*,
   No. 99-cv-0962 (RCC), 2006 U.S. Dist. LEXIS 87825 (S.D.N.Y. Dec. 4 2006) ..................19

*In re Tezos Sec. Litig.*,
   3:17-cv-6799 (N.D. Cal.)......................................................................................................20

*In re Tezos Sec. Litig.*,
   No. 17-CV-06779 (RS), 2018 WL 4293341 (N.D. Cal. Aug. 7, 2018)............................15, 16

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)....................................................................................................19

Lead Plaintiff Crypto Assets Opportunity Fund, LLC ("Lead Plaintiff" or "CAOF") respectfully submits this memorandum of law in support of its unopposed motion for approval of its notice of settlement of the claims against defendants Block.one ("Block.one" or the "Company"), Brendan Blumer, Daniel Larimer, Ian Grigg, and Brock Pierce (collectively, "Defendants").

## I.    INTRODUCTION

This action was brought pursuant to the federal securities laws.  The asserted claims, therefore, were made on behalf of purchasers of securities – EOS Tokens and ERC-20 Tokens issued by Defendants – that are subject to the federal securities laws.  One consideration in determining whether a security is subject to the federal securities laws is whether the acquisition of such security qualifies as a domestic transaction under *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010) ("*Morrison*").  The revised settlement for which Lead Plaintiff now seeks permission to disseminate notice only covers the class members for whom the action was brought; *i.e.*, only purchasers whose acquisitions of EOS Tokens and ERC-20 Tokens qualify as domestic transactions under *Morrison* and its progeny.

This settlement represents the second time that Lead Plaintiff and Defendants reached agreement to resolve Lead Plaintiff's claims.  The Court denied Lead Plaintiff's application for final approval of that previous settlement because it determined that Lead Plaintiff's representation of the absent class members was not adequate.  *See* ECF No. 146 at 24 (concluding that adequacy of representation was not met).  Specifically, the Court took note of the fact that Lead Plaintiff had acquired EOS Tokens through a variety of means, some of which complied with the domesticity requirements under *Morrison* ("*Morrison*-compliant), and some of which did not.  *Id.* at 20.  The Court further observed that the proposed class included all purchasers of EOS and ERC-20 Tokens, regardless of whether their transactions were *Morrison*-compliant.  *Id.* at 19.  Thus, although the

Court recognized that a lead plaintiff may, in fact, settle claims for non-meritorious claims (*see In re Petrobras Sec. Litig.*, 317 F. Supp. 3d 858, 866 (S.D.N.Y. 2018) (noting that the Second Circuit allows settlement of "entirely non-meritorious claims" so that "defendants might buy global peace")), it concluded that potential flaws pertaining to adequacy of representation precluded it from granting final approval of the first settlement. *Id.* at 24.

Lead Plaintiff and Defendants have now negotiated a revised settlement (the "Proposed Settlement"). As set forth in the Stipulation of Settlement dated as of January 27, 2023, (the "Settlement Agreement"), Lead Plaintiff, on behalf of itself and this more-narrowly defined putative Class, has agreed to settle all Domestic Transaction claims asserted in the Consolidated Actions[1] in exchange for $22,000,000.00 in cash (the "Settlement Amount"). The Proposed Settlement settles *only* those claims that were alleged in the Complaint, *i.e.*, only for purchasers whose acquisitions of EOS Tokens and ERC-20 Tokens are *Morrison*-compliant. No issues can arise, therefore, regarding adequacy of Lead Plaintiff's representation, because the class for the Proposed Settlement includes only *Morrison*-compliant purchases. None of the Settlement Funds will be disbursed to purchasers whose transactions were not domestic under *Morrison*.

The Settlement Agreement defines a "Domestic Transaction" to include a purchase: (1) of ERC-20 Tokens or EOS Tokens on any of the following exchanges or digital asset trading platforms: (i) Coinbase (including Tagomi, Routefire, and Paradex); (ii) Coinbase Pro (including GDAX); (iii) Kraken; (iv) Poloniex; (v) Bittrex; (vi) Binance US; (vii) Genesis; (viii) Cumberland; (ix) FTX.US; (x) Gemini; (xi) Radar Relay; (xii) CoinFlip; or (xiii) or any other exchanges or digital trading platforms based in the United States at the time of the transaction(s) in question; (2)

---

[1] The two captioned actions, *Williams, et al. v. Block.one, et al.*, 1:20-cv-2809 and *Crypto Assets Opportunity Fund, et al. v. Block.one, et al.*, 1:20-cv-3829, were consolidated by Order of this Court dated August 4, 2020, ECF No. 57.

of ERC-20 Tokens or EOS Tokens on any digital asset trading platform or exchange that was acquired by or merged with any of the above named exchanges or digital asset trading platforms; or (3) of ERC-20 Tokens or EOS Tokens where both the purchaser and seller are located in the United States; or (4) of ERC-20 Tokens made directly from Block.one during its token sale that took place from June 26, 2017 to June 1, 2018; or (5) of EOS Tokens that were verified by EOS block producers within the United States based on publicly available information at https://eosauthority.com/producers_rank or other comparable websites.

 As explained in Section II, *infra*, this definition of "Domestic Transaction" (and of the Class) includes only claimants whose purchases of ERC-20 Tokens and/or EOS Tokens qualify as "domestic transactions" under *Morrison* and jurisprudence that applies the *Morrison* test to cryptocurrencies.  Thus, there are no concerns that Lead Plaintiff negotiated an improper discount on the settlement amount in light of non-*Morrison*-compliant investors because the negotiations did not contemplate those investors at all.  Similarly, no non-*Morrison*-compliant investors are eligible to participate in the Plan of Allocation.  *See infra*, Section III-C.

Further, the Proposed Settlement represents a significant recovery for the Class − a result that is even more impressive in light of the difficulties associated with litigating a securities fraud class action on behalf of cryptocurrency purchasers.  While Lead Plaintiff and its counsel believe that the claims against Defendants are meritorious, they also recognize that, in the absence of a settlement, they faced the significant risk that a smaller recovery – or, indeed, no recovery – might be achieved after a trial of the Consolidated Action and the likely appeals that would ensue. Furthermore, the parties had previously agreed to settle *all* potential claims against Defendants – even those arising from purchases that were not *Morrison*-compliant – for $27.5 million. Defendants have now agreed to a significantly more limited release, applying only to *Morrison*-

compliant purchases, but have agreed to just a 20% reduction from that previous settlement amount.

## II.   FACTUAL AND PROCEDURAL BACKGROUND OF THE LITIGATION

The case arises out of Defendant Block.one's token sale that lasted from June 26, 2017 through June 1, 2018, in which it promoted and sold millions of cryptocurrency tokens to individual and institutional buyers. Block.one did not register its tokens with the SEC or conduct the token sale pursuant to a registration statement, which Lead Plaintiff alleges violated Section 12(a)(1) of the Securities Act of 1933 ("Securities Act"). *See* Amended Compl., ECF No. 66. Further, Lead Plaintiff contends that Defendants effectuated the sale of tokens through false and misleading statements, which violated Section 12(a)(2) of the Securities Act and Section 10(b)(5) of the Securities Exchange Act of 1934 ("Exchange Act"). *Id.* The 350-day token sale raised over $4 billion – a massive sum that Lead Plaintiff contends was not spent on developing the "revolutionary" technology that would underlie the heavily promoted EOS blockchain. *Id.* ¶¶ 61, 71. Rather, Lead Plaintiff asserted that the proceeds were classified as Block.one's revenue and then channeled to Block.one's cryptocurrency trading arm located in Hong Kong, where Defendant Blumer, Block.one's CEO, invested it in bitcoin and other cryptocurrencies as well as more traditional securities, such as government bonds. *Id.* ¶¶ 144, 148. Investors who purchased tokens[2] in the token sale (and subsequently in secondary markets on cryptocurrency exchanges) did not share any stake in the venture capital fund; instead, profits from those investments inured to Block.one's executives and equity owners. *Id.* ¶¶ 71, 144, 148. Lead Plaintiff asserts that the

---

[2] Investors who purchased in the token sale were first given Ethereum-native "ERC-20 Tokens," which entitled them to native EOS Tokens once the EOSIO software and EOS blockchain officially launched. As a result, the Class definition encompasses purchasers of Block.one-issued ERC-20 Tokens and EOS Tokens.

EOSIO software and EOS blockchain, once released, came nowhere near Block.one's promises of efficient, fair, and above all decentralized governance, by 21 "block producers," which Lead Plaintiff contends revealed that Defendants' heavy promotional efforts were false and misleading. *Id.* ¶¶ 128–143. Lead Plaintiff asserts that, as Block.one's misrepresentations about EOSIO, ERC-20 Tokens, and EOS Tokens were gradually revealed through June 26, 2019, the price of EOS Tokens plummeted, causing substantial losses to investors. *Id.* ¶ 26.

The Complaint alleges that a reasonable purchaser could not have concluded that ERC-20 Tokens or EOS Tokens were securities, however, until September 30, 2019, when the SEC issued a cease-and-desist order. *Id.* ¶¶ 25, 111. The SEC asserted that Block.one-issued ERC-20 Tokens are securities within the meaning of the Securities Act and should not have been sold without registration with the SEC (or pursuant to an exemption) and ordered that Block.one cease and desist its violations of securities laws. *Id.* Block.one paid a $24 million fine to settle the charges. *Id.* ¶ 114.

The initial complaint was filed in this Court on April 3, 2020 by plaintiffs Chase Williams and William Zhang against defendants Block.one, Brendan Blumer, and Daniel Larimer. *Williams, et al. v. Block.one, et al.*, Case No. 1:20-cv-2809, ECF No. 1. It asserted claims for offering or selling unregistered securities in violation of §§ 5 and 12(a)(1) of the Securities Act and several state "Blue Sky" laws. *Id.* On May 18, 2020, plaintiffs CAOF and Johnny Hong filed a separate complaint against Defendants. *Crypto Assets Opportunity Fund, et al. v. Block.one, et al.*, Case No. 1:20-cv-3829, ECF No. 1. In addition to asserting claims under the 1933 Act, they asserted claims under Section 10(b) of the Exchange Act and SEC Rule 10b-5. *Id.* On August 4, 2020, pursuant to the Private Securities Litigation Reform Act ("PSLRA"), the Court consolidated the

two cases and appointed CAOF as Lead Plaintiff and Grant & Eisenhofer as Lead Counsel.  ECF No.[3] 57.

On September 18, 2020, Lead Plaintiff filed the First Amended Class Action Complaint, alleging that Defendants sold unregistered securities in violation of federal securities laws, issued securities pursuant to a false and misleading prospectus, and disseminated materially false and misleading statements regarding ERC-20 EOS Tokens and native EOS Tokens during the Class Period.  ECF No. 66.  This operative complaint alleged violations of §§ 5, 12(a)(1) and 12(a)(2) of the Securities Act and § 10(b) of the Exchange Act and SEC Rule 10b-5 against Defendants, and violations of § 15 of the Securities Act and § 20 of the Exchange Act against Defendants Blumer, Larimer, Grigg, and Pierce.  *Id.*

On November 2, 2020, Defendants Block.one, Larimer, and Pierce, who had been served as of that date, filed a motion to dismiss the Complaint. ECF No. 85. Lead Plaintiff filed its opposition on December 2, 2020 (ECF No. 92), and the moving defendants filed their reply on January 11, 2021.  ECF No. 97.

Lead Plaintiff commissioned Total Credit Management Services Hong Kong Limited ("Total Credit") to effect personal service on Defendants Blumer and Grigg in Hong Kong. Having made diligent, albeit unsuccessful, efforts to personally serve Blumer, Lead Plaintiff moved the Court to authorize alternative service of process on Blumer pursuant to Fed. R. Civ. P. 4(f).  ECF No. 99.  On February 22, 2021, the Court granted Lead Plaintiff's motion. ECF. No. 106.

In late February 2021, while the motion to dismiss was pending, the parties began to explore the possibility of a settlement of the Action and claims of the class.  Lead Counsel then

---

[3] All future references to "ECF No." are to the docket in the earlier filed action captioned *Williams, et al. v. Block.one, et al.*, Case No. 1:20-cv-2809.

engaged the Berkeley Research Group, LLC ("BRG") to assist with evaluating potential damages to the putative Class in this Action.  While Lead Plaintiff and Lead Counsel believe that the claims asserted in the Action have merit, mindful of potential weaknesses in Lead Plaintiff's claims as well as the expense and length of continued proceedings necessary to prosecute the Action through trial, Lead Plaintiff believed that it would be beneficial to explore the possibility of a settlement.

Over the course of the next two months, Counsel for Defendants and Lead Counsel engaged in extensive negotiations of a prospective settlement.  Separately, Lead Plaintiff and Lead Counsel discussed the strengths and weaknesses of the claims and defenses, costs and risks of litigation, and the possibility of the Court's dismissal of the claims in light of other, recent decisions in cases involving cryptocurrencies.

At the end of April 2021, the parties engaged in another series of discussions, and on May 8, 2021, Lead Plaintiff and Defendants reached an agreement to settle the claims for a sum of Twenty-Seven Million and Five Hundred Thousand Dollars ($27,500,000).  On May 9, 2021, counsel for the parties notified the Court on a confidential basis that the parties had reached an agreement in principle and thereafter executed a term sheet that reflected their agreement.  Over the next month, the parties worked diligently to prepare the Stipulation of Settlement and accompanying documents to bring the settlement to the Class for its consideration.

On June 11, 2021, the parties filed their motion to approve the proposed settlement, memorandum of law in support, declaration of Daniel L. Berger, including the stipulation of settlement, plan of allocation, and notice of plan proposal, and a proposed order.  ECF Nos. 110–113.  After deciding that the settlement resulted from arms-length negotiations between the parties, the Court scheduled a settlement hearing for November 17, 2021.  ECF No. 115.

On October 13, 2021, Lead Counsel for Plaintiff filed the declaration of Joseph Mahan regarding the media campaign and claims package dissemination, publication of the summary notice, and report on requests for exclusion.  ECF No. 116.  On October 17, 2021, the parties filed a motion for final approval of the class action settlement agreement, memorandum of law in support, and declaration of Daniel L. Berger in support of the motion for approval of the class action settlement, certification of the proposed class and class representative, appointment of Lead Counsel as class counsel, and approval of the plan of allocation of settlement funds.  ECF No. 118–20.

On November 10, 2021, Lead Counsel for Plaintiff submitted a response letter to the Court's November 3, 2021 Order (ECF No. 133) including the following information: (1) a restated consolidated lodestar spreadsheet detailing each timekeeper's hours, tasks, and historical and blended hourly rates and explanation of the categories of work for which compensation is sought; (2) biographical information for the individuals for whom compensation is sought and whose biographical information was not previously submitted; (3) supplemental facts and explanation regarding reasonableness of hourly rates; (4) an explanation of expenses; (5) additional information regarding the composition of EOS token purchasers, *i.e.*, the number of foreign vs. domestic purchasers; (6) supplemental facts and argument regarding whether CAOF is typical of other class members with regards to the classification of its EOS token purchases as foreign or domestic; (7) additional information regarding the proposed method for administering the settlement; (8) additional information regarding the claims administration process; (9) documentation required for ownership of tokens post May 18, 2020; (10) additional information regarding the *pro rata* allocation of the settlement fund; (11) information regarding the plan for the distribution of any remaining balance of the settlement fund; and (12) additional information

regarding the determination of cryptocurrency transaction dates. ECF No. 134. On November 24, 2021, Lead Counsel for Plaintiff submitted a supplemental letter to the Court concerning the fairness of the settlement and allocation plan providing further evidence to support the adequacy and typicality of claims of Lead Plaintiff, including (1) that CAOF made domestic purchases of EOS Tokens during the Class Period; and (2) that the breakdown of CAOF's purchases between domestic and foreign is 50%-50%. ECF No. 136. On November 24, 2021, Lead Counsel filed the following documentation in support of the motion for final approval: (1) the declaration of Daniel L. Berger with (a) a certification on behalf of CAOF including a Schedule A listing of all CAOF's transactions in EOS Tokens during the Class Period, and (b) an excel spreadsheet created by CAOF's current fund administrator (NAV Consulting), including all of CAOF's Class Period transactions in EOS Tokens for which NAV Consulting served as fund administrator (ECF No. 137); (2) the declaration of Ievgeniia P. Vatrenko with (a) a copy of the Block.one EOS Purchase Agreement as revised on September 4, 2017, (b) an article by Rachel McIntosh, titled *Tagomi Co-Founder: Big Tech Will Bring Institutionals to Crypto*, (c) an article by Laura Shin, titled *Tagomi: A One-Stop Solution for Large Crypto Trades*, and (d) a PDF of the Coinbase Customer Service page on Crunchbase.com – a platform that provides company insights and business information demonstrating that Tagomi was purchased by Coinbase in May 2020 (ECF No. 138); and (3) the declaration of Frank C. Torchio – President of Forensic Economics, Inc. – regarding the Plan of Allocation. ECF No. 139.

On August 15, 2022, the Court issued a memorandum opinion denying the parties' motion for final approval of settlement and attorney's fees due to concerns with the adequacy of representation. ECF No. 146. The Court's conclusion turned on issues relating to *Morrison*. Knowing that Lead Plaintiff had some purchases that complied with *Morrison's* domesticity

requirements, and some that did not, but not knowing the relative breakdown of those transactions, the Court raised the prospect that Lead Plaintiff's interests might "conflict with those of the absent class members on the issue of foreign versus domestic transactions." *Id.* at 19.  The Court found that it had "little to no information" regarding the proportion of transactions which were domestic as compared to those of absent class members and that the parties had not made the showing required for the settlement class to be certified.  *Id.* at 17–18.  The Court also noted that Lead Plaintiff accepted a reduced settlement amount because it was including non-*Morrison*-compliant claims, which likely would have been dismissed, and was concerned that perhaps too big of a discount had been negotiated, to the detriment of *Morrison*-compliant investors. *Id.* at 24.  Further, the Court explained that "[f]or those class members who purchased tokens in domestic transactions, the settlement amount is in effect further reduced because…claimants who made foreign purchases are eligible to collect on the same terms and therefore reduce the amount of the settlement pot available to domestic purchasers."  *Id.* at 24.  Thus, the Plan of Allocation improperly favored non-*Morrison*-compliant purchasers by putting them on equal footing with *Morrison*-compliant purchasers.

During the next several months, Lead Counsel for Plaintiff and Counsel for the Defendants resumed negotiations of a prospective revised settlement.  Lead Plaintiff now insisted that any settlement could not release claims that could not have been brought in this action, and thus should apply only purchasers who had *Morrison*-compliant transactions.  Defendants agreed to negotiate on this basis, but insisted that because of the reduced class, any settlement payment would have to be less than the amount previously agreed.  Initially the parties' discussions focused on the definition of the Class and the scope of the release.  As the negotiations progressed, and the scope of the Class was largely agreed upon, the parties engaged in another series of discussions regarding

10

an appropriate settlement fund in light of the more narrowly defined Class.  Separately, Lead Counsel and Lead Plaintiff discussed these issues together.

On December 21, 2022, Lead Plaintiff and Defendants reached an agreement to settle the Action for a sum of Twenty-Two Million Dollars ($22,000,000).  The proposed settlement defines the class to include those persons who engaged in Domestic Transactions during the class period as defined in the Settlement Agreement.

Although the Proposed Settlement of $22 million is less than the initial proposed settlement of $27.5 million, Lead Plaintiff and Lead Counsel determined that the reduced amount is fair to the Class Members, since the revised class definition only includes purchasers with Domestic Transactions and, therefore, persons who purchased the covered tokens outside the United States will not share in the settlement proceed.  Further, the Proposed Settlement represents a fair portion of the total damages for transactions on domestic exchanges or digital asset trading platforms.

On December 28, 2022, counsel for the parties notified the Court on a confidential basis that the parties had reached an agreement in principle. Over the next several weeks, the parties worked diligently to prepare the Stipulation of Settlement and accompanying documents to present this settlement notice to the Court for its approval.

III.    THE PROPOSED SETTLEMENT WARRANTS NOTICE TO THE CLASS

A.    The Court's Reasons for Not Approving the First Settlement

As discussed *supra*, on August 15, 2022, the Court issued a memorandum opinion denying the parties first motion for approval of settlement and attorney's fees due to concerns with the adequacy of representation of the Class under *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010). ECF No. 146.  In its opinion, the Court discussed the difficulties of applying the general principles of *Morrison* to blockchain transactions and determining whether a given

blockchain transaction is domestic or foreign. *Id*. at 13–18.  However, despite some complexities, the Court acknowledged that (i) investors who acquired tokens on a domestic exchange could recover damages under the federal securities laws and *Morrison*, and (ii) investors who acquired tokens in a "domestic transaction" in securities not listed on domestic exchanges could recover damages under the federal securities laws and *Morrison*. *Id*. at 13–14.

Noting that the proposed settlement encompassed purchasers whose token acquisitions did, and did not, qualify as domestic under *Morrison* – and therefore were not subject to the securities laws of the United States – the crux of the Court's inquiry turned on "whether the proportion of plaintiff's purchases that were subject to the federal securities laws is the same as, or representative of, the proportion of such purchases by absent class members." *Id*. at 4.  The Court found that it had "little to no information" regarding the proportion of Lead Plaintiff's transactions that were domestic as compared to those of absent class members. *Id*. at 17–18.  Adequacy of representation, therefore, was not demonstrated. *Id*. at 24.  The Court denied the motion for final approval of the settlement because the requirement of adequate representation had not been satisfied. *Id*. at 25.  In so doing, the Court "hasten[ed] to add that it implies no misconduct or criticism of the Lead Plaintiff or its experienced and well regarded Lead Counsel," but opined that the result was compelled by a "structural problem having roots in the unusual market that this case concerns." *Id.* at 25.

**B.    Description of the New Proposed Class**

The Proposed Settlement provides that Defendants will pay $22 million in cash into an Escrow Account for the benefit of the Class.  This consideration, after deducting any attorneys' fees and litigation expenses, as provided for in the Settlement Agreement or approved by the Court, and less any fees associated with notifying the class and administering the settlement consideration

(*i.e.*, the "Net Settlement Fund"), will be distributed among the Settling Class Members who submit timely and valid Proof of Claim and Release Forms in accordance with the Plan of Allocation set forth in the Notice.  The Class includes "all persons or entities who, at any time during the period of June 26, 2017 through May 18, 2020, inclusive, acquired ERC-20 Tokens or EOS Tokens in a Domestic Transaction and were damaged thereby, including purchases (including, but not limited to, over-the-counter and peer-to-peer purchases) (1) of ERC-20 Tokens or EOS Tokens on any of the following exchanges or digital asset trading platforms: (i) Coinbase (including Tagomi, Routefire, and Paradex); (ii) Coinbase Pro (including GDAX); (iii) Kraken; (iv) Poloniex; (v) Bittrex; (vi) Binance US; (vii) Genesis; (viii) Cumberland; (ix) FTX.US; (x) Gemini; (xi) Radar Relay; (xii) CoinFlip; or (xiii) or any other exchanges or digital trading platforms based in the United States at the time of the transaction(s) in question; (2) of ERC-20 Tokens or EOS Tokens on any digital asset trading platform or exchange that was acquired by or merged with any of the above named exchanges or digital asset trading platforms; or (3) of ERC-20 Tokens or EOS Tokens where both the purchaser and seller are located in the United States; or (4) of ERC-20 Tokens made directly from Block.one during its token sale that took place from June 26, 2017 to June 1, 2018; or (5) of EOS Tokens that were verified by EOS block producers located within the United States based on publicly available information at https://eosauthority.com/producers_rank or other comparable websites."  Investors falling into each of these subcategories of the Class engaged in domestic transactions under *Morrison*.

The first two categories list domestic exchanges on which cryptocurrencies commonly trade. As the Court states in its August 15, 2022 Order, "a platform that offers trading of digital assets that are securities and operates as an 'exchange' … must register … as a national securities exchange or operate pursuant to an exemption from registration." ECF No. 146. at 14. The Court

also notes that Poloniex was determined by the SEC to be a national securities exchange and, as such, "investors who acquired ERC-20 or EOS tokens on a domestic exchange such as Poloniex could recover damages under the federal securities laws…" ECF No. 146 at 14.

In addition to Poloniex, the Class definition specifies the domestic exchanges or digital asset trading platforms that may have been used to purchase ERC-20 Tokens or EOS Tokens to provide for a broad release while also complying with *Morrison*.  Specifically, the Class includes purchases on the following domestic exchanges or digital asset trading platforms: (i) Coinbase (including Tagomi, Routefire, and Paradex); (ii) Coinbase Pro (including GDAX); (iii) Kraken; (iv) Poloniex; (v) Bittrex; (vi) Binance US; (vii) Genesis; (viii) Cumberland; (ix) FTX.US; (x) Gemini; (xi) Radar Relay; (xii) CoinFlip; or (xiii) or any other exchanges or digital trading platforms based in the United States at the time of the transaction(s) in question.  The Class also includes purchases of ERC-20 Tokens or EOS Tokens on any digital asset trading platform or exchange that was acquired by or merged with any of the above-named exchanges or digital asset trading platforms.

Based on our research, we determined that the above-named platforms and exchanges were located in the United States and allowed investors to transact in cryptocurrencies, satisfying Morrison and its progeny.  *See* Declaration of Ievgeniia P. Vatrenko, and exhibits attached thereto. We confirmed that ERC-20 Tokens and EOS Tokens traded on the majority of the platforms included in the Class definition, *id.* at ¶ 21, and we have also included certain platforms that we determined are domestic, but for which we could not confirm whether EOS Tokens have ever traded to err on the side of being overly-inclusive.

14

The third category in the Class definition – pertaining to transactions where both the purchaser and seller are located in the United States – includes domestic transactions under *Morrison* because Class Members who can demonstrate that **both** the purchaser **and** seller of ERC-20 Tokens or EOS Tokens were located in the United States engaged in domestic transactions. *See In re iAnthus Capital Holdings, Inc. Sec. Litig.*, 20-cv-03135-LAK, 2022 WL 4539119, at *6–8 (S.D.N.Y. Sept. 28, 2022) (holding that the negotiation and execution of an agreement by the parties at their respective offices in the United States evinces contract formation and gives rise to a plausible inference of a domestic transaction).

The fourth category – which pertains to ERC-20 Tokens purchased directly from Block.one during its initial coin offering – includes domestic transactions under *Morrison* because the Block.one offering occurred in the United States. *See* ECF No. 137, Ex. A (EOS Token Purchase Agreement); ECF No. 66 (Amended Complaint) at ¶¶ 9, 57, 117 (Block.one required investors to sign the EOS Token Purchase Agreement prior to purchasing their ERC-20 Tokens). All transactions in which investors purchased ERC-20 Tokens in the Token Sale directly from Block.one are domestic under *Morrison*. *See In re Tezos Sec. Litig.*, No. 17-CV-06779 (RS), 2018 WL 4293341, at *7 (N.D. Cal. Aug. 7, 2018). *In Re Tezos* holds that the lead Plaintiff's token purchases directly from seller's website, as here, occurred in the United States because: (1) the plurality of Ethereum nodes that verified the plaintiff's purchase of Tezos tokens were located in the United States, (2) Tezos tokens were purchased on an interactive website hosted on a server in Arizona, (3) the transaction at issue was conducted by the Plaintiff in the U.S., and (4) the Plaintiff's purchase was induced by the marketing of Tezos tokens to U.S.-based customers. *Id.* at *8. The Court reasoned that, "[w]hile no single one of these factors is dispositive…together they support an inference that [Plaintiff's] alleged securities purchase occurred inside the United

States." *Id.* at *8, n.13 (citing *SEC v. Traffic Monsoon, LLC*, 245 F.Supp.3d 1275, 1296 (D. Utah 2017) (holding that where non-exchange listed securities are offered and sold over the internet, the sale takes place in both the location of the seller and the location of the buyer.)). The holding in *In re Tezos* is consistent with this District's holding in *Barron v. Helbiz Inc.*, No. 20-cv-4703 (LLS), 2021 WL 229609 (S.D.N.Y. Jan. 22, 2021) *vacated and remanded on other grounds*, No. 21-278, 2021 WL 4519887 (2d Cir. Oct. 4, 2021), where the Court found that the token purchase transactions were effected in the jurisdictions where the purchasers were located at the time they purchased the digital asset at issue in that case.

Finally, the fifth category – which pertains to purchases of EOS Tokens that were verified by nodes existing in the United States – includes domestic transactions because the Court's August 15, 2022 Order states that "'irrevocable liability' is incurred when the transaction has been verified by at least one individual node of the blockchain" and "the location of the node that verified the specific transaction at issue should control in this circuit under *Morrison*…" ECF No. 146 at 17. Further, the Court advised that this method "appears to be administrable as well because the location of the first node to validate a given transaction, the action which renders that transaction binding, appears to be identifiable." *Id*.

Finally, Lead Plaintiff believes that the Proposed Settlement is an excellent recovery based on the claims asserted in the Consolidated Actions, and is in all respects, fair, adequate, reasonable, and in the best interests of the Class. As noted, although the scope of investors who are eligible to seek recovery from the Settlement Fund is significantly narrowed as compared to the previous settlement presented to the Court, the Settlement Fund has only been reduced by 20%, from $27.5 million to $22 million. Thus, dissemination of notice of the Proposed Settlement is warranted.

### C.     The Plan of Allocation

The Plan of Allocation was determined with the assistance of Lead Plaintiff's expert, Frank Torchio, of Forensic Economics, Inc., who has more than 30 years of experience in assisting with securities damages calculations and development of plans of allocation.  Lead Plaintiff submits that the Plan of Allocation is fair and reasonable and should be approved together with the Settlement at the Settlement Hearing.  Specifically, the Plan of Allocation is identical to the Plan of Allocation that was previously submitted to the Court, except that it will not provide any recovery to any non-*Morrison*-compliant claimants because they cannot participate in the Settlement since they are not members of the Class.

The Plan of Allocation allocates the Net Settlement Fund to Settling Class Members on a *pro rata* bases after determining the Settling Class Members' Recognized Loss Amounts.  The Plan of Allocation accounts for the consideration that an Authorized Claimant used to purchase his/her/its ERC-20 and/or EOS Tokens and, if the Authorized Claimant sold the Tokens, when the sale occurred.  Specifically, the Plan of Allocation calculates a Recognized Loss Amount in the following ways for Authorized Claimants:

1.   Investors Who Purchased in the Token Sale Directly from Defendants in the Period of June 26, 2017 to June 1, 2018: rescissory damages, as set forth in Section 12 of the Securities Act.  15 U.S.C. § 77l.

2.   Investors Who Purchased in Secondary Markets in the Period of June 26, 2017 to June 4, 2019: losses based on an inflation ribbon, as constructed by Mr. Torchio, for investors who purchased on secondary market exchanges during the period of June 26, 2017 (first day of trading on secondary markets) to June 25, 2019 (last corrective

disclosure), pursuant to traditional damages theories associated with violations of Section 10(b)(5) of the Exchange Act.

The Claims Administrator – Epiq Systems, Inc. – was selected by Lead Plaintiff based on its experience in handling the one other cryptocurrency case that has settled on a class-wide basis. Epiq will calculate each Authorized Claimant's Recognized Loss based on the information supplied in each person's Proof of Claim.

### D.     Lead Plaintiff Is Adequate to Represent Members of the Proposed Class

As demonstrated to the Court previously, certain of Lead Plaintiff's acquisitions of EOS Tokens were *Morrison*-compliant. Specifically, Lead Plaintiff purchased EOS Tokens on the Tagomi exchange during the Class Period. ECF No. 136 at 1-2, Declaration of Daniel L. Berger, dated November 24, 2021, Ex. B. The Tagomi exchange is a domestic exchange under the relevant law. ECF No. 136 at 2-3; Declaration of Ievgeniia P. Vatrenko, dated November 24, 2021 and exhibits attached thereto. Specifically, the Tagomi platform was operated out of New York and New Jersey, and its founding principles were U.S. domiciles. *Id.* It is therefore a domestic platform under *In re Poloniex*, SEC Rel. No. 92607 (Aug. 9, 2021). Tagomi, which was later acquired by Coinbase, is therefore encompassed in the proposed class definition. Just as it would make no difference if Lead Plaintiff acquired other types of securities not issued by Block.one, it does not matter that it has acquired some EOS Tokens via non-*Morrison*-compliant transactions, because Lead Plaintiff will not be eligible to recover any losses from those transactions. The proposed Class definition does not encompass investors with non-*Morrison*-compliant transactions, and there is no risk that they would be favored, or in any way diminish the recoveries of investors whose transactions do comply with *Morrison*.

### E.      Notice of Settlement Should Be Authorized

Lead Plaintiff refers to and incorporates by reference the relevant portions of the Memorandum of Law in Support of its Motion to Approve Notice filed on June 11, 2021 which more fully describes the facts and circumstances providing the basis for the authorization of notice of the Proposed Settlement.  ECF No. 111 at Section III.B.

## IV.    NOTICE OF THE SETTLEMENT AND PROCEDURE FOR PROVIDING NOTICE TO CLASS MEMBERS SHOULD BE APPROVED

### A.      The Content of the Notice

Rule 23 of the Federal Rules of Civil Procedure requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  There are no "rigid rules" to apply when determining the adequacy of notice for a class action settlement; and "the standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 113–14 (2d Cir. 2005).  Moreover, the content of a notice is generally found to be reasonable if "the average class member understands the terms of the proposed settlement and the options provided to class members thereunder." *In re Stock Exch. Options Trading Antitrust Litig.*, No. 99-cv-0962 (RCC), 2006 U.S. Dist. LEXIS 87825, at *22 (S.D.N.Y. Dec. 4, 2006).

The proposed Notice (attached as Exhibit A-1 to the Settlement Agreement) advises Class Members of, inter alia: (i) the nature of the action and claims, issues and defenses asserted; (ii) the definition of the Class certified by the Court; (iii) the essential terms of the Settlement; (iv) the proposed Plan of Allocation; and (v) information regarding Lead Counsel's forthcoming motion for an award of attorneys' fees and expenses.  The Notice also provides specific information regarding the date, time, and place of the Final Approval Hearing, and sets forth the procedures

and deadlines for a class member to: (i) submit a Claim Form; (ii) object to any aspect of the Settlement, including the proposed Plan of Allocation, and Lead Counsel's request for attorneys' fees and expenses; (iii) exclude herself from the class; and (iv) how to enter an appearance. Finally, the Notice informs class members of the binding effect of the judgment and release provided to be provided to defendants, should the settlement be approved.  As discussed below, no second opportunity for opting out of the Class is necessary under the particular circumstances of this Action.  *See* §V below.

The content of the proposed Notice also meets the requirements of the PSLRA.  In addition to the foregoing, the Notice includes: (i) a statement of the amount to be distributed, determined in the aggregate and on an average per share basis; (ii) a statement of the potential outcome of the case (*i.e.*, whether there was agreement or disagreement on the amount of damages); and (iii) a brief statement that explains the reasons why the Parties are proposing the Settlement.  *See* 15 U.S.C. §78u-4(a)(7).

As outlined in the Preliminary Approval Order, the proposed Claims Administrator, Epiq Global, under the direction of Lead Counsel, will notify Class Members of the proposed Settlement. Epiq was selected because it served as the claims administrator in a similar cryptocurrency case, *In re Tezos Sec. Litig.*, 3:17-cv-6799 (N.D. Cal.) (ECF No. 246). Lead Plaintiff's counsel also conferred with Defendants' counsel here, Brian Klein, who served as Defendants' counsel in the *Tezos* litigation, and who confirmed that Epiq ably handled the claims administration there.

### B.     The Notice Procedure

The notice procedure mirrors the procedure initially approved by this Court, and performed by Epiq, except that Epiq is i) only targeting investors who engaged in Domestic Transactions, and

ii) adding an additional method of outreach by contacting the domestic exchanges to provide notice to all people who purchased through a domestic exchange during the Class Period. Epiq will also contact each claimant personally who filed a claim in the first settlement.

The initial procedure performed by Epiq was successful and resulted in numerous cryptocurrency-focused publications publishing the news on their platforms. ECF No. 116 at ¶ 8. Epiq also identified 186 email addresses of potential claimants who had begun, but not yet completed the claims process, which resulted in additional claims submissions. *Id*. at ¶ 9. In addition to the media campaign, the settlement website received 76,369 hits as of October 8, 2021. *Id*. at ¶ 11. As of October 13, 2021, Epiq had not received any requests for exclusions. *Id*. at ¶ 18. A Notice Plan Proposal is attached to the accompanying Declaration of Daniel L. Berger as Exhibit 3.

The Notice and Claim Form substantially in the forms of Exhibits A-1 and A-2 to the Settlement Agreement, will be accessible to all interested persons who view the links on the above-referenced sites. In addition, the Claims Administrator will cause copies of the Notice and Claim Form, along with other documents and information relevant to the Settlement, to be posted on the Settlement website, www.BlockOne-Settlement.com.

In sum, the Notice and Summary Notice "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Lomeli v. Sec. & Inv. Co. Bahr.*, 2013 WL 6170572, at *2 (2d Cir. Nov. 26, 2013) (summary order). Accordingly, Lead Counsel respectfully submits that the proposed notice program is adequate and should be approved by the Court.

## V.    THE PROPOSED SCHEDULE SHOULD BE APPROVED

In connection with preliminary approval of the Proposed Settlement, the Court must also set a final approval hearing date, dates for mailing and publication of the Notice and Summary Notice, and deadlines for submitting claims, opting out of the settlement, and objecting to the Settlement.  The parties respectfully submit the following schedule for the Court's consideration, as set forth in the Preliminary Approval Order.

| Event | Date |
|---|---|
| Commence Mailing of Notice | 14 days after entry of Notice Order ("Notice Date") |
| Publish Summary Notice | 10 days after Notice Date |
| Service by Lead Counsel on Defendants' Counsel of Affidavit Confirming Notice | 7 days prior to Settlement Hearing |
| Deadline to Submit Proofs of Claim and Release | 120 days after Notice Date |
| Deadline to Request Exclusion from the Class | 21 days prior to Settlement Hearing |
| Deadline to File Objections to the Proposed Settlement | 21 days prior to Settlement Hearing |
| Lead Plaintiff to File Motion for Approval of the Settlement and Lead Counsel to File Application for Attorneys' Fees and Expenses | 30 days prior to Settlement Hearing |

Dated: New York, New York
January 27, 2023

Respectfully submitted,

 */s/  Daniel L. Berger*
Daniel L. Berger
Caitlin M. Moyna
**GRANT & EISENHOFER P.A.**
485 Lexington Avenue
New York, NY 10017
Tel.: (646) 722-8500
Fax: (646) 722-8501
Email: dberger@gelaw.com
Email: cmoyna@gelwa.com

*Lead Counsel for the Class and Counsel for Lead Plaintiff Crypto Assets Opportunity Fund, LLC*

Ievgeniia P. Vatrenko, Esq.
2 Northside Piers
Brooklyn, NY 11249
Tel.: (718) 451-6384
Email: jenny@vatrenkoesq.com

James Koutoulas
**Koutoulas Law LLC**
10 N. Dearborn
Chicago, IL 60604
Tel.: (312) 836-1180
Email: james@koutoulaslaw.com

J. Samuel Tenenbaum
**Bluhm Legal Clinic of the Northwestern Pritzker School of Law**
**Complex Civil Litigation and Investor Protection Center**
375 East Chicago Ave.
Chicago, IL 60611
Tel.: (312) 503-4808
Email: s-tenenbaum@law.northwestern.edu

*Additional Counsel for Crypto Assets Opportunity Fund LLC*